## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

Bacon v. Snyder, et al.
Case No. 18-10348

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SHORT-FORM COMPLAINT [89, 90, 91, 93]

This is one of the many cases that are collectively referred to as the Flint Water Cases. Plaintiffs allege that Defendants, a combination of private and public individuals and entities, set in motion a chain of events that led to bacteria and lead leaching into the City of Flint's drinking water. Plaintiffs in the various Flint Water Cases claim that Defendants subsequently concealed, ignored, or downplayed the risks that arose from their conduct, causing them serious harm. These plaintiffs contend that the impact of what has since been called the Flint Water Crisis is still with them and continues to cause them problems.

The Plaintiff in this particular case is Deborah Sapolin, personal representative of the Estate of Margaret A. Bacon.[1] In previous Flint Water decisions, the Court has set forth descriptions of each Defendant in these cases, and adopts those descriptions as if fully set forth here. *See In re Flint Water Cases*, 384 F. Supp. 3d 802, 824–825 (E.D. Mich. 2019).

Before the Court are four motions to dismiss. On June 16, 2020, Defendants Lockwood, Andrews & Newnam, Inc. and Lockwood, Andrews & Newnam, P.C. (together, "LAN") moved to dismiss Plaintiff's complaint. (ECF No. 89.) Defendant Leo A. Daly Company ("LAD") also moved to dismiss on the same day. (ECF No. 90.) On June 17, 2020, the Michigan Department of Environmental Quality ("MDEQ") individual Defendants Stephen Busch, Patrick Cook, and Michael Prysby (collectively, "MDEQ Defendants") moved to dismiss.[2] (ECF No. 91.) And finally, on the same day, Defendants the City of Flint, Darnell Earley,

---

[1] The Court will refer to Ms. Sapolin, as personal representative of Ms. Bacon's estate as Plaintiff, and will refer to Ms. Bacon herself as Bacon.

[2] Defendants former Governor Richard D. Snyder and Andy Dillon filed a notice of joinder/concurrence in the MDEQ Defendants' motion to dismiss. (ECF No. 92.) (Defendants Snyder and Dillon are, collectively, the "State Defendants.") Defendant Adam Rosenthal also filed a joinder and concurrence in the MDEQ Defendants' motion. (ECF Nos. 97, 99.) Rosenthal will be included in the Court's reference to the "MDEQ Defendants."

Gerald Ambrose, Dayne Walling, Howard Croft, Michael Glasgow, and Daugherty Johnson (collectively "City Defendants") moved to dismiss. (ECF No. 93.) For the reasons set forth below, the Court grants in part and denies in part Defendants' motions to dismiss the complaint.

## I. Prior Precedent in the Flint Water Cases

This Court has previously adjudicated other motions to dismiss in the Flint Water Cases. First, there was *Guertin v. Michigan*, No. 16-12412, involving individual plaintiffs and many of the same claims and Defendants in the present case. Next, there was *Carthan v. Snyder*, No. 16-10444, a consolidated class action that also involved similar Defendants and claims. Also, there were *Walters v. City of Flint*, No. 17-10164, and *Sirls v. Michigan*, No. 17-10342, which involved individual plaintiffs and the same Master Complaint as the present case.

Most recently, there were *Brown v. Snyder*, No. 18-10726, and *Marble v. Snyder*, No. 17-12942, which not only involved individual plaintiffs and similar claims, facts, Defendants, and the same Master Complaint as the present case, but also involved *legionella* bacteria, which is the focus of this case.

The Flint Water Cases have already produced several Sixth Circuit opinions. These are binding on this Court and include *Carthan v. Earley*, 960 F.3d 303 (6th Cir. 2020); *Walters v. Flint*, No. 17-10164, 2019 WL 3530874 (6th Cir. August 2, 2019); *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019); *Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017); and *Mays v. City of Flint*, 871 F.3d 437 (6th Cir. 2017).

The Court will also adhere to its own prior decisions where appropriate, including *Guertin v. Michigan*, No. 16-12412, 2017 WL 2418007 (E.D. Mich. June 5, 2017); *Carthan v. Snyder*, 329 F. Supp. 3d 369 (E.D. Mich. 2018); *Carthan v. Snyder*, 384 F. Supp. 3d 802 (E.D. Mich. 2019); and *Walters v. City of Flint*, No. 17-10164, 2019 WL 3530874 (E.D. Mich. Aug. 2, 2019). In particular, it will rely on *Marble v. Snyder*, 453 F. Supp. 3d 970 (E.D. Mich. 2020) and *Brown v. Snyder*, No. 18-10726, 2020 WL 1503256 (E.D. Mich. Mar. 27, 2020) to resolve the current motions where appropriate. This opinion will describe Plaintiff's legal claims and then explain why a similar or different result is justified based on the factual allegations pleaded here.

## II. Procedural History and Background

### A. The Master Complaint

As the number of Flint Water Cases increased over the years, the Court entered case management orders to manage the litigation. For example, in early 2018, it appointed and then directed co-liaison lead counsel for the individual plaintiffs to file a Master Complaint that would apply to all pending and future non-class action cases. (*Carthan*, No. 16-10444, ECF No. 347.) The Master Complaint was filed in *Walters*. (*Walters*, No. 17-10164, ECF no.185-2.) The attorneys in each of the individual cases were also ordered to file a Short Form Complaint, adopting only the pertinent allegations from the Master Complaint as they saw fit. The Short Form Complaints also allowed for an Addendum if any Plaintiff wished to allege a new cause of action or include additional Defendants. This would allow the Court to issue opinions that would apply to multiple individuals, rather than to address each case in turn and cause a delay in the administration of justice. This is the procedure that Plaintiff was required to follow in this case.

### B. Plaintiff's Operative Short-Form Complaint Filed June 1, 2020

Plaintiff's operative Short Form Complaint was filed on June 1, 2020 (the "June 2020 Short Form Complaint").  (ECF No. 86.) In it, she

fully adopts the relevant facts alleged in the Master Complaint from *Walters*. (*Walters*, No. 17-cv-10164, ECF No. 185-2.) The Master Complaint's facts, setting forth the background of the Flint Water Crisis, were summarized in this Court's opinion in *Walters* and will not be reproduced here. *Walters v. City of Flint*, No. 17-cv-10164, 2019 WL 3530874, at *4–*11 (E.D. Mich. Aug. 2, 2019). However, as set forth above, unlike *Walters*, Plaintiff does not allege injuries from lead poisoning. Rather, she alleges injuries from Bacon's exposure to *legionella*.

Plaintiff's June 2020 Short Form Complaint involves the following claims against the following Defendants. First, she checked boxes on the short form for the following Defendants.[3]

- Governor Richard D. Snyder[4]

[3] Plaintiff originally included Bradley Wurfel in her operative complaint, but stipulated to his dismissal shortly thereafter. (ECF No. 88.) The operative complaint also named Darnell Earley and Gerald Ambrose. (ECF No. 86.) However, in her response to the City Defendants' motion to dismiss, and as further discussed below, Plaintiff consented to the dismissal of her claims against Earley and Ambrose. (ECF No. 105, PageID.1476.) Accordingly, these three individuals are not included in this list.

[4] Plaintiff does not specify whether she sues former Governor Snyder in his official or individual capacity. For the sake of consistency with earlier Flint Water decisions, former Governor Snyder will be referred to as Governor Snyder or the Governor where it appears that the claim against him is in his individual capacity. Where it appears that the claim is against him in his official capacity, the claim is

- The City of Flint
- Howard Croft
- Michael Glasgow
- Daugherty Johnson
- Stephen Busch
- Patrick Cook
- Michael Prysby
- Adam Rosenthal
- Andy Dillon
- Lockwood, Andrews & Newnam P.C.
- Lockwood Andres & Newnam, Inc.
- Leo A. Daly Company
- Rowe Professional Services Company and Rowe Engineering (together, "Rowe")

(ECF No. 86.)

Next, she checked the boxes on the short form complaint for the following claims:

- Count I: 42 U.S.C. § 1983–14th Amendment, Substantive Due process- State Created Danger
- Count II: 42 U.S.C. § 1983–14th Amendment. Substantive Due Process- Bodily Integrity
- Count IV: 42 U.S.C. § 1983 – 5th and 14th Amendments, Equal Protection of the Law- Wealth Based
- Count VIII: Punitive damages
- Count IX: Professional Negligence (LAN PC, LAN Inc. and LAD)

---

now against Governor Gretchen Whitmer. *See* Fed. R. Civ. P. 25(d). But, again, for consistency, the Court will still refer to Governor Snyder.

- Count X: Professional Negligence (Rowe)[5]
- Count XIII: Survival and Wrongful Death, MCL 600.2922 (All Defendants)

(ECF No. 86, PageID.1189–90.)

## C. Plaintiff's Previous Complaints, Claims, and Defendants

Before analyzing Defendants' motions to dismiss, it is helpful to set forth some of the background of Plaintiff's case. Before she died, Bacon initially filed her lawsuit in the State of Michigan, Genesee County Circuit Court. She amended her complaint on April 26, 2016 (the "April 2016 Complaint"). The Defendants in that case removed it to this Court. (*Bacon v. Rowe et al.*, No. 16-11579, (E.D. Mich. May 3, 2016) (O'Meara, J.).) The following month, in May 2016, Bacon voluntarily dismissed the individual Defendants in that case. (*Id*. at ECF No. 32.) The remaining parties stipulated to remand the case back to the Genesee County Circuit Court, and they stipulated to permit Bacon to file a second amended complaint. (*Id*. at ECF Nos. 34, 35.)

Now back in the Genesee County Circuit Court, Bacon progressed with her second amendment to the complaint, which was titled the First

---

[5] Defendant Rowe answered the complaint. (ECF No. 98.)

Amended Short Form Complaint, pursuant to the Master Individual Complaint adopted by the Genesee County Circuit Court. On November 9, 2017, she filed her First Amended Short Form (the "November 2017 Complaint"). *Bacon v. Lockwood, Andrews & Newman, P.C. et al.*, No. 17-106692, Consol. Docket No. 17-108646 (Mich. Genesee Cir. Ct. Nov. 9, 2017) (ECF No. 1-1, PageID.47–57; ECF No. 1-3, PageID.59–146.) On January 30, 2018, Defendants jointly removed Bacon's action to this Court. (ECF No. 1.)

As set forth above, on March 26, 2018, after this Court's consolidation and case management orders were entered, Bacon adopted the Master Complaint from *Walters* in full and filed a Short Form Complaint with new allegations and new Defendants (the "March 2018 Short Form Complaint"). (ECF No. 14.)

On April 10, 2018, Bacon unfortunately passed away. (ECF No. 26, 27.) The Court granted a substitution of parties, replacing Bacon with Plaintiff. (ECF No. 31.) Plaintiff and several Defendants then stipulated to dismissal of certain Defendants and certain claims. (ECF Nos. 82, 83.)

On June 1, 2020, Plaintiff filed the operative June 2020 Short Form Complaint.[6] (ECF No. 86.) This complaint differed from her previous complaints in many regards, not only reflecting a new post-death cause of action for wrongful death, but also reflecting several other changes in Defendants and claims.

For example, the June 2020 Short Form Complaint omits some of the claims Bacon previously brought in this case before her death, including: gross negligence, negligent nuisance in fact, public nuisance, intentional nuisance in fact, intentional infliction of emotional distress, grossly negligent infliction of emotional distress, assault and battery, breach of contract, breach of implied warranty, trespass, unjust enrichment, and a CERCLA violation.

Further, the operative complaint omits Bacon's previous claims against Defendants Daniel Wyant, Laine Shekter Smith, Nick Lyon, State of Michigan, Jeff Wright, Edward Kurtz, Dayne Walling, Veolia LLC, Veolia, Inc., and others. Notably, the June 2020 Short Form Complaint also includes new claims Bacon never brought before: a 41

---

[6] Plaintiff did so pursuant to the Court's order allowing Plaintiffs in any remaining post-*Marble* and post-*Brown legionella* cases to amend their complaints before June 3, 2020. (ECF No. 1150.)

U.S.C.§ 1983 claim based on wealth, a claim for punitive damages, and a state law claim for survival and wrongful death. Finally, Plaintiff did not check the operative complaint's checkbox for "Property Damage," as Bacon had in past iterations of her complaint. (ECF No. 86 PageID.1189.) Nevertheless, Plaintiff filled out paragraph seven of the short form complaint, which instructs that the paragraph should only be filled out "[i]f alleging property damage." (*Id.*, PageID.1188.)

One reason for highlighting this is because Plaintiff requests in her response brief that she be permitted to amend her complaint again if the Court finds her operative complaint fails to state a claim. (ECF No. 105, PageID.1473.)

Although Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave" to amend, this policy does not include arguments made as an aside in a response brief. A "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend." *Kuyat v. MioMimetic Theraputics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (citing *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)). In *Kuyat*, the Sixth Circuit evaluated language from the

plaintiffs in a response brief that stated, "Alternatively, Plaintiffs request leave to amend the Complaint in the event that the Court finds that it falls short of the applicable pleading standards in any respect." (*Id.* at 444.) The plaintiffs in that case did not attach a copy of their proposed amended complaint. Taking these two factors together, the Sixth Circuit found that this type of argument for an amendment, made in a response in opposition to a Rule 12(b)(6) motion is essentially "throwaway language" and that the district court did not abuse its discretion in refusing to allow the plaintiffs to amend. *Id.*

Here, Plaintiff argues that "if arguendo, Plaintiff has not alleged sufficient facts linking her death to her Legionella sickness, the appropriate remedy is to grant Plaintiff leave to further amend." (ECF No.105, PageID.1473.) She argues that "any such deficiencies can be readily cured by granting" leave to amend. (*Id.*) Plaintiff did not include her proposed amendment. Instead, she includes a short paragraph stating that Bacon suffered, "numerous severe infections to her lungs and other parts of her body – which in turn affected her ability to oxygenate and heal from other illnesses that were either pre-existing or contracted after she contracted Legionella sickness."(*Id.* at PageID.1474.) Then, she

states that these additional facts "should arguably be sufficient to cure the factual deficiencies." (*Id.*)

Plaintiff's purported factual-support paragraph is not a proposed amendment. Indeed, all it does is raise more questions. What was the nature of Bacon's severe illness, and what other parts of her body besides her lungs were infected? What were her "other illnesses"? Were they contracted before or after her *legionella* exposure and illness? What were her "pre-existing conditions" that are referenced, and how do they tie into her claims? Her response to factual deficiencies raise more questions than answers. In this way, Plaintiff's request to further amend her complaint is not meaningfully different from that which was rejected in *Kuyat*. Accordingly, her request for leave to amend is denied.

### III. Legal Standard

When deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

13

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### IV. Analysis

#### A. Incorporation of Prior Complaints

#### 1. The State-Court First Amended Master Long Form Complaint

As an initial matter, Plaintiff did not properly incorporate the items that she references in the June 2020 Short Form Complaint. Federal Rule of Civil Procedure 10(c) governs adoptions by reference, and states, "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The Sixth Circuit rule that "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to

dismiss" applies. *Weiner v. Klais & Co.*, 108 F.3d 86, 98 (6th Cir.1997), (overruled on other grounds, *Swierkiwica v. Sorema, N.A.*, 534 U.S. 506, (2002)).

Plaintiff did not attach the First Amended Long Form Complaint to her pleadings, nor is it anywhere else on her docket. In paragraph twelve of the June 2020 Short Form Complaint, Plaintiff states that she "incorporates herein by reference" the factual allegations and conduct of Defendants "set forth in the *First* Amended Master Long Form Complaint and her Short form Complaint filed in the Genesee County Circuit Court on November 9, 2017, prior to being removed to this Honorable Court on or about January 20, 2018." (ECF No. 86, PageID.1190 (emphasis added).)

The state-court *First* Amended Master Long Form Complaint, which she specifically names, is not part of the record in this case. Rather, the state-court *Second* Amended Master Long Form Complaint was the operative state-court long form complaint at the time of removal, and is included on the docket. Plaintiff was clear in her reference to the First Amended Long Form Complaint, and not the Second. Plaintiff does not address this discrepancy or seek to make a correction in her response

15

briefs.[7] Indeed, she does not address this discrepancy at all. Accordingly, she will be taken at her word regarding the item she specifically referenced, and the First Amended Master Long Form Complaint is not incorporated.

## 2. The November 2017 Complaint

Plaintiff does, however, properly incorporate portions of Bacon's state-court November 2017 Complaint. Unlike the state-court First Amended Master Long Form complaint, the November 2017 Complaint was filed on the docket in this case. (ECF No. 1-2.) However, the November 2017 Complaint is rife with internal inconsistencies, and it involves parties and claims that do not align with the boxes she checked in her June 2020 Short Form Complaint.

---

[7] Moreover, Plaintiff doubles down on this discrepancy in her sur-reply, claiming that she may have never intended to incorporate the state-court filings at all, where she states:

> The MDEQ Defendants have incorrectly represented that Plaintiff is relying on the Master Long Form Complaint filed in the Genesee County Circuit Court. This is simply not true. Plaintiff is relying on her Amended Short Form Complaint ([ECF No. ]86), which expressly adopted the Master Long Form Complaint that was filed with this Court in *Walters* . . .

(ECF No. 111-1, PageID.1527.) Her sur-reply is not a factor in this decision, but it does illustrate more of the inconsistencies she presents in this case.

For example, in her short form November 2017 Complaint, Bacon sets forth introductory descriptions of individuals identified as governmental defendants, including Dennis Muchmore, Eden Victoria Wells, M.D., Linda Dykema, Nancy Peeler, and Robert Scott. But then, she fails to specifically name them when setting forth her counts. (ECF No. 1-2, PageID.53–56.) Further complicating the puzzle, her November 2017 Complaint incorporates by reference paragraphs of the state-court Second Amended Master Long-Form Complaint. The state-court Second Amended Master Long-Form Complaint does allege counts against these specific individuals. When the two are taken together, it is unclear whether Plaintiff was suing those individuals by incorporation or not since she only partially addressed them in her short form complaint. Yet, it is not the job of this Court to sort this out, particularly since these individuals are not defendants here.

The only relevant paragraphs that the Court can discern in Bacon's November 2017 Complaint are her specific allegations regarding *legionella* exposure. They are set forth below:

> 2. As a direct and proximate result of using Flint River water in her activities of daily living, Plaintiff Margaret A. Bacon contracted Legionella pneumonia on or about September 12, 2014 in her home, resulting in lengthy hospitalizations during

17

which she was intubated and placed on mechanical ventilation and treated with intravenous antibiotics.

3. As a direct and proximate result of Plaintiff Margaret Bacon's Legionella pneumonia and lengthy hospitalizations, mechanical ventilation, and life threatening infections, she suffered severe and permanent injuries and damages.

(ECF No. 1-2, PageID.48.) These are the only paragraphs where Plaintiff provides any detail regarding her *legionella* exposure and illness. The Court will accept as incorporated only those paragraphs set forth above that describe Plaintiff's *legionella* exposure and subsequent illness.

**B. Plaintiff Fails to State a Wrongful Death Claim**

MDEQ Defendants, State Defendants, City Defendants, LAN and LAD's and motions to dismiss Plaintiff's wrongful death claim are granted because Plaintiff did not plead any facts to demonstrate that Bacon's death, or injuries resulting in death, were caused by the wrongful act, neglect, or fault of Defendants. Plaintiff alleges wrongful death under Michigan Compiled Laws § 600.2922. The statute provides for the recovery of damages for a wrongfully caused death, and governs the distribution of wrongful death damages. *Id*. Actions under this statute are derivative and must be brought by the personal representative of the

estate. Mich. Comp. Laws § 600.2922(2). The statute states, in relevant part,

> Whenever the death of a person, injuries resulting in death, . . . shall be *caused by wrongful act, neglect, or fault of another*, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages . . . .

Mich. Comp. Laws § 600.2922(1) (emphasis added). Plaintiff did not plead any facts to demonstrate that Bacon's death, or injuries resulting in death, were caused by the "wrongful act, neglect, or fault" of Defendants.

In paragraph ten of her June 2020 Short Form Complaint, Plaintiff sets forth her claims. Her claim for survival and wrongful death against all Defendants, is identified as an "additional claim" that is not identified in the Master Complaint from *Walters*. Accordingly, to sustain her additional claim, Plaintiff was required to provide factual support in paragraph twelve.

Paragraph twelve of Plaintiff's June 2020 Short Form Complaint states:

12. If additional claims against the Defendants identified in the Master Long Form Complaint are alleged in paragraph 10, the facts supporting these allegations must be pleaded. Plaintiff asserts the following factual allegations against the Defendants identified in the Master Long Form Complaint:

A.   Plaintiff, Deborah Sapolin, as the Personal Representative of the Estate of Margaret A. Bacon, incorporates herein by reference all preceding factual allegations set forth in the First Amended Master Long Form Complaint and her Short Form Complaint filed in the Genesee County Circuit Court on November 9, 2017, prior to being removed to this Honorable Court on or about January 30, 2018.

B.   The conduct of Defendants, as described in the First Amended Master Long Form Complaint and Plaintiff's Short Form Complaint filed in the Genesee County Circuit Court on November 9, 2017, was the proximate cause of Margaret A. Bacon's death.

C.   Plaintiff, as Personal Representative of the Estate of Margaret A. Bacon, Deceased, is entitled to the following damages as a result of Defendants' conduct:
    i.    All damages recoverable pursuant to Michigan's wrongful death statute, MCL 600.2922;
    ii.   Damages for pain and suffering sustained by decedent Margaret A. Bacon before her death on April 10, 2018;
    iii.  Loss of past and future earnings;
    iv.   Funeral and burial expenses;
    v.    Medical and hospital expenses;
    vi.   Damages for the loss of society and companionship suffered by Margaret A. Bacon's family members.

(ECF No. 86, PageID.1190–91.)

As set forth above, Plaintiff failed to properly incorporate her state-court complaints except for paragraphs 2–3, which specifically relate to Bacon's *legionella* exposure and illness. However, even the incorporated paragraphs do not provide any facts related to the cause of Bacon's death because they were written before April 2018 when she died.

Therefore, the June 2020 Short Form Complaint was the place to set forth allegations regarding Bacon's cause of death. Yet, the only allegation regarding Bacon's death in the June 2020 Short Form Complaint is Plaintiff's conclusory allegation that Defendants were "the proximate cause of Margaret A. Bacon's death." (PageID.1190–91.) This bare allegation provides no facts regarding how her 2014 illness, while very serious, contributed to or caused her 2018 death.

Plaintiff argues in her response briefs that Bacon died "as a result of complications associated with her Legionella sickness." (ECF No. 101, PageID.1395; ECF No. 102, PageID.1414.) She states that she "advised the court of this" and was given a "green light" to add wrongful death and survival claims to her short form complaint. (*Id.*) She also defends the brevity of her pleadings, stating that the format of long-and-short-form complaints adopted in this case:

allow each individual Plaintiff to simply check boxes for Defendants and claims, and they are set up in a way that minimizes the amount of additional factual information that each individual Plaintiff must allege in addition to what is already alleged in the Master Complaint. These special pleading requirements clearly supersede any conflicting procedural requirements contained elsewhere.

(ECF No. 105, PageID.1471.) She argues that these forms create a "relaxed specificity standard." (*Id*. at 1472.)

Finally, Plaintiff argues that, even without the "relaxed" standard, her facts were sufficient to support a wrongful death claim:

Her [June 2020] Short Form Complaint clearly identifies that she contracted legionella sickness as a result of being exposed to the contaminated Flint water supply, and that she became violently ill immediately thereafter as a result. Her Complaint further confirms that she subsequently underwent extensive medical treatment *and died with a reasonable short amount of time after contracting Legionella sickness* and undergoing extensive medical treatment for all of the harms that it brought upon her. Given the nature and severity of her legionella sickness and the timing of her death, it is clearly reasonable to infer circumstantially that Plaintiff's ultimate death was brought on by her legionella sickness.

(ECF No. 105, PageID.1472 (emphasis added).)

This is not an accurate account of the contents of the June 2020 Short Form Complaint. As set forth above, Plaintiff alleges Bacon was

exposed to *legionella* in September 2014, and died over three-and-a-half years later in April 2018. Three-and-a-half years is not a "reasonable short amount of time," particularly when Plaintiff has not provided any additional detail regarding the length of Bacon's illness, or what harms it brought about that could reasonably lead the Court to conclude that *legionella* exposure, and therefore Defendants, caused her death.

Nor are Plaintiff's arguments that the streamlined process for long- and-short-form complaints creates a "relaxed" specificity standard persuasive. The short form complaint itself states, "factual support for these allegations must be pleaded." (ECF No. 86, PageID.1190.) The Master Complaint from *Walters* specifically states that, "[a]ny separate facts and additional claims of individual Plaintiffs may be set forth as necessary in the actions filed by the respective Plaintiffs." (*Walters*, No. 17-0164, ECF No.185-2, PageID.5044.) Factual support for a complaint is a basic pleading requirement under Federal Rule of Civil Procedure 8, which is unchanged by the streamlined process in the Flint Water cases.

Accordingly, Defendants' motions to dismiss Plaintiff's wrongful death claim are granted. Rowe answered the complaint and did not move to dismiss this claim. However, in light of this decision, Rowe may file a

motion under Rule 12(c) within sixty days, which is Monday December 21, 2020.

### C. Plaintiff's Remaining Long-Form Counts

All of Plaintiff's remaining claims rely in their entirety on the Master Complaint from *Walters*. (*Walters,* No. 17-10164, ECF No. 86, PageID.1186.) The Court will address each claim in turn as set forth below.

### 1. State-Created Danger Claim

Plaintiff alleges that MDEQ Defendants, State Defendants, and City Defendants violated Bacon's right to be free from a state-created danger. (ECF No. 86, PageID.1189.) The Defendants moved to dismiss. (ECF No. 91, PageID.1307–08); (ECF No. 93, PageID.1327.)

Plaintiff concedes in her response that, "the Court dismissed identical State Created Danger claims" in *Marble* and *Brown*. (ECF No. 104, PageID.1459.) She acknowledges that the Court's ruling in those cases govern this issue but notes that she disagrees with those rulings. (*Id*.)

For the reasons set forth in *Marble* and *Brown*, Plaintiff's state-created danger claims are dismissed. *Brown*, 2020 WL 1503256, at * 16; *Marble*, 453 F. Supp. 3d at 988–91.

### 2. Bodily Integrity Claim

Plaintiff alleges that MDEQ Defendants, State Defendants, and City Defendants violated her right to bodily integrity. (ECF No. 86, PageID.1189.) The Defendants moved to dismiss. (ECF No. 91, PageID.1296–1306); (ECF No. 93, PageID.1333–1337.)

As in *Marble*, the Court adopts the governing legal standard for a bodily integrity claim set forth previously in *Walters* and *Carthan*:

> The right to bodily integrity is a fundamental interest protected by the Due Process Clause of the Fourteenth Amendment. *Guertin*, 912 F.3d at 918–19; *Guertin*, 2017 U.S. Dist. LEXIS 85544, at *63 (citing *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). And although violations of the right to bodily integrity usually arise in the context of physical punishment, the scope of the right is not limited to that context. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062–63 (6th Cir. 1998). For instance, the "forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Guertin*, 912 F.3d at 919 (citing *Washington v. Harper*, 494 U.S. 210, 229 (1990)). And "compulsory treatment with anti-psychotic drugs may [also] invade a patient's interest in bodily integrity." *Guertin*, 2017 U.S. Dist. LEXIS 85544, at *66 (citing *Lojuk v. Quandt*, 706 F.2d 1456, 1465–66 (7th Cir. 1983)). The key is whether the intrusion is consensual. *See Guertin*, 912 F.3d at 920. There is no difference between the

forced invasion of a person's body and misleading that person into consuming a substance involuntarily. *Guertin*, 2017 U.S. Dist. LEXIS 85544, at \*71 (citing *Heinrich v. Sweet*, 62 F. Supp. 2d 282, 313–14 (D. Mass. 1999)). As such, officials can violate an individual's bodily integrity by introducing life-threatening substances into that person's body without their consent. *Guertin*, 2017 U.S. Dist. LEXIS 85544, at \*65 (citing *Washington*, 494 U.S. at 229).

However, to state a claim, plaintiffs must do more than point to the violation of a protected interest; they must also demonstrate that it was infringed arbitrarily. *Guertin*, 912 F.3d at 922. *But see Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (observing that in some contexts government action may violate substantive due process without a liberty interest at stake). And with executive action, as here, only the most egregious conduct can be classified as unconstitutionally arbitrary. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In legal terms, the conduct must "shock[ ] the conscience." *Guertin*, 2017 U.S. Dist. LEXIS 85544, at \*63 (quoting Lewis, 523 U.S. at 846).

Whether government action shocks the conscience depends on the situation. *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002). Where unforeseen circumstances demand the immediate judgment of an executive official, liability turns on whether decisions were made "maliciously and sadistically for the very purpose of causing harm." *Lewis*, 523 U.S. at 852–53 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). But where an executive official has time for deliberation before acting, conduct taken with "deliberate indifference" to the rights of others "shocks the conscience." *See Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000). This case involves the latter of these two situations. And as a result, plaintiffs must demonstrate that (1) officials knew of facts from which they could infer a "substantial risk of serious harm," (2) that they did infer it, and (3) that they nonetheless acted with indifference, *Range*, 763 F.3d at 591 (citing

> *Ewolski*, 287 F.3d at 513), demonstrating a callous disregard towards the rights of those affected, *Guertin*, 912 F.3d at 924 (quoting *Schroder v. City of Fort Thomas*, 412 F.3d 724, 730 (6th Cir. 2005)).

*Marble,* 453 F. Supp. 3d at 991–92 (citing *Walters*, 2019 WL 3530874, at *14–*15; *Carthan*, 384 F. Supp. 3d at 839–40).

As set forth, the Court's inquiry is whether each Defendant had knowledge of the facts from which they could infer a substantial risk of serious harm to Bacon, did infer it, and nonetheless acted with indifference demonstrating a callous disregard towards Bacon's rights. Accordingly, the pertinent time frame for this knowledge-based analysis is the time before Bacon became ill on September 12, 2014. In analyzing the bodily integrity claims in *Walters*, the Court relied upon many facts that occurred after Bacon became ill. Those facts are not applicable to the bodily integrity claim here, which is limited to whether Defendants can be held liable for the conditions that resulted in Bacon contracting *legionella*. For this reason, only conduct undertaken by Defendants before Plaintiff fell ill with *legionella* on September 12, 2014 can be considered in this analysis.

### a) *Legionella* Exposure

As an initial matter, in both *Marble* and *Brown*, the Court determined that bodily integrity claims based on *legionella* exposure could proceed on the same bases as claims based on lead exposure. *Marble*, 453 F. Supp. 3d at 992–93; *Brown*, 2020 WL 1503256 at *5–*8. It also held that the Defendants' actions that allegedly hid the Flint water's lead and *legionella* content implicated the plaintiffs' right to bodily integrity. *Id*. The Court fully adopts those conclusions in this case.

MDEQ Defendants and State Defendants urge the Court to decide this issue differently here because, they argue, state-level *legionella* exposure regulations do not rest with MDEQ as the state regulator. (ECF No. 91, PageID.1300.) Plaintiff does not address this argument in her response. (ECF No. 104.)

In *Brown*, MDEQ Defendants and State Defendants also argued that *legionella*-related cases should be decided differently from lead injury cases. (Brown, ECF No. 83, PageID.442, 444); (ECF No. 91, PageID.1310–1312.) The Court rejected that argument in *Brown*, explaining:

> "[T]his is not a case about the right to a contaminant-free environment or clean water. Rather, this case implicates the consumption of life-threatening substances. Indeed, neither side disagrees that lead and *legionella* are life threatening,

28

nor that plaintiffs ingested these contaminants and others through the water supply." [*Carthan*,] 384 F. Supp. 3d at 840 (internal citations removed). Similarly, as the Sixth Circuit held in *Guertin*, a related Flint Water Case: "Involuntarily subjecting nonconsenting individuals to foreign substances with no known therapeutic value—often under false pretenses and with deceptive practices hiding the nature of the interference—is a classic example of invading the core of the bodily integrity protection." *Guertin v. State*, 912 F.3d 907, 920–21 (6th Cir. 2019).

*Brown*, 2020 WL 1503256, at * 7. The presence of *legionella* bacteria was a foreseeable consequence of the April 2014 switch to the Flint River. As such,

> Plaintiff plausibly alleges that the presence of *legionella* bacteria in Flint was a foreseeable result of the April 2014 switch to Flint River water. Because Defendants allegedly hid the fact that Flint's water contained life-threatening substances like lead and *legionella*, and because under state and municipal law, Plaintiff was not permitted to receive water in any other way, Flint Code of Ord. §§ 46-25, 46-26, 46-50(b), Plaintiff's claim implicates the right to bodily integrity. *See Walters*, 2019 WL 3530874, at *15.

*Brown*, 2020 WL 1503256, at * 7. Moreover, the Court's reasoning regarding exposure in *Brown* applies with the same force here:

> The right to bodily integrity is not dependent upon which particular dangerous or even lethal substance came from Flint's pipes. Defendants made a choice to utilize the long dormant Flint Water Treatment Plant ("FWTP"), knowing

that the plant required millions of dollars in upgrades before it could process the raw water from the Flint River, and that those upgrades would not be implemented.

*Id.* at *8.

As such, this issue has already been fully litigated in *Marble* and *Brown*. MDEQ Defendants and State Defendants advance no compelling arguments to justify treating *legionella*-related cases differently from lead injury cases. Accordingly, the Court will adhere to its prior decisions in *Marble* and *Brown*.

### b) Defendants Cook and Dillon

In *Brown*, the Court dismissed the bodily integrity claims against Cook and Dillon because the Master Complaint contained insufficient factual allegations against them that preceded Odie Brown's death in January 2015. *Brown*, 2020 WL 1503256, at *9, *12. If the pre-January 2015 allegations in *Brown* were insufficient, then Plaintiff's pre-September 2014 allegations here must also fail. For the reasons stated in *Brown*, Plaintiff's bodily integrity claims against Cook and Dillon are dismissed.[8] *See Brown*, 2020 WL 1503256, at *9, *12.

---

[8] In her response to the City Defendants' motion to dismiss, Plaintiff states that, based on *Brown*, dismissal should be denied against all Defendants "except for Defendants Ambrose and Walling." (ECF No. 105, PageID. 1469–70.) However,

### c) Defendant Governor Snyder

In contrast to Cook and Dillon, the allegations set forth in *Brown* indicated that Governor Snyder knew of and inferred a substantial risk of serious harm to Flint water users prior to September 2014.

> [Governor Snyder] knew that the use of "Flint River water as a primary drinking source had been professionally evaluated and rejected as dangerous and unsafe" in 2011. (*Id.* at PageID.5077.) He also knew that under the plan to create the Karegnondi Water Authority, Flint River water would be used as an interim source of water for the City of Flint. (*Id.*) Plaintiff also alleges that shortly after the switch to Flint River water, the Governor's office began receiving complaints about the water. (*Id.* at PageID.5085.) There were also numerous press stories about water quality problems in Flint as early as May 2014. (*Id.*) By June of 2014, "[m]any Flint water users reported that the water was making them ill[.]"

*Id.* (citing *Walters*, No. 17-10164, ECF No. 185-2). As in *Brown*, it is reasonable to infer that because Governor Snyder knew of the significant risks and seriously compromised water quality issues well before then, he knew of and did infer a substantial risk. *Brown*, 2020 WL 1503256, at

---

Walling is not a defendant in this case (ECF No. 86), so it is unclear why Plaintiff includes this argument. However as to Ambrose, the Court accepts Plaintiff's statement in her response that Defendants' motion to dismiss should be denied except as to Ambrose as a stipulation to his dismissal. Ambrose is dismissed.

*8. Accordingly, the first two elements of a bodily integrity claim have been adequately plead.

As for the third element of a bodily integrity claim, callous disregard, the Court in *Marble* determined that the plaintiff's claim that Governor Snyder "authorized the switch to the Flint River, knowing that 'there was no agreed upon plan in place to implement the necessary remediation at the FWTP in order to use Flint River water as Flint's sole source of water.'" *Marble*, 453 F. Supp. 3d at 994 (citing Master Complaint from *Walters*, No. 17-10164, ECF No. 185-2, PageID.5077.) The Court in *Marble* also reasoned that "the Governor's continued inaction following the switch reinforces his deliberate indifference." *Id.* Even without the allegations of a cover-up beginning in January 2015, approximately four months after Bacon contracted *legionella*-related illness, Governor Snyder's failure to act for months despite notice of harm shows a callous disregard. The Court came to a similar conclusion in *Brown*, where it also disregarded allegations that took place after January 2015. *Brown*, 2020 WL 1503256, at * 9. Accordingly, Governor Snyder's motion to dismiss is denied and Plaintiff's bodily integrity claim against him may continue.

### d) Defendants Croft, Glasgow, and Johnson

In *Carthan*, the Court summarized Croft, Glasgow, and Johnson's alleged actions. The following occurred before September 12, 2014, when Bacon contracted illness:

> As the transition to the Flint River loomed, [in spring of 2014] all three knew that the FWTP was not ready to process the raw water. And Croft, in particular, was aware of the lead and Legionnaires' disease issues that followed the transition. Glasgow tested for and found high concentrations of lead in the water. He also recognized that Flint was not using corrosion control treatment and had no legitimate lead and copper testing in place. . . . Despite knowing that the FWTP was not ready to process the Flint River water, Croft and Johnson pressured Glasgow to give the green light to the transition [in April 2014].

*Carthan*, 384 F. Supp. 3d at 860. Accordingly, it is reasonable to conclude that these Defendants were aware of the substantial risk of harm facing Bacon, that they did infer it, and that they acted with callous disregard toward her.

In *Walters*, the Court found that the plaintiffs' bodily integrity claims in the Master Complaint contained essentially the same allegations as the *Carthan* complaint with respect to Croft, Johnson, and Glasgow. *Walters*, 2019 WL 3530874, at *18. Accordingly, for the same

reasons set forth in *Carthan* and *Walters*, Croft, Glasgow, and Johnson were aware of the substantial risk of harm facing Bacon.

Analyzing the callous disregard element with respect to these three Defendants again in *Marble*, the Court stated,

> [A]ll three Defendants participated in making the switch to the Flint River in April 2014, knowing that the FWTP was not ready to process water. This fact alone is enough to show callous disregard for Bertie Marble's bodily integrity.

453 F. Supp. 3d at 1000. Here, this fact alone is also enough to show Croft, Glasgow, and Johnson's callous disregard for Bacon's bodily integrity. Because these individuals were involved in the switch to the Flint River, knowing full well of the dangers, and the relevant conduct took place prior to September 14, 2014, Plaintiff has stated a bodily integrity claim against Croft, Glasgow, and Johnson.

### e) Defendants Busch and Prysby

With respect to Busch and Prysby, the relevant pre-September 2014 facts were also set forth in *Marble*.

> Plaintiffs allege that Busch was involved in resolving the regulatory hurdles to using Flint River water. (*Id.* at PageID.5173–5176.) For example, he helped obtain an Administrative Consent Order ("ACO") that was critical to allowing the City of Flint to begin using the FWTP, although the plant was "nowhere near ready to begin distributing

34

water." (*Id.* at PageID.5176.) Plaintiffs allege that Prysby
reviewed and approved the permit "that was the last approval
necessary for the use of the Flint Water Treatment Plant." (*Id.*
at PageID.5081, 5179.)

 Moreover, shortly before the switch, the FWTP's water
quality supervisor wrote to Prysby and Busch that he had
inadequate staff and resources to properly monitor the water.
(*Id.* at PageID.5080.) As a result, he informed Prysby and
Busch, "I do not anticipate giving the OK to begin sending
water out anytime soon. If water is distributed from this plant
in the next couple of weeks, it will be against my direction."
(*Id.*) But Prysby and Busch did not act on this warning.

*Id.* at 997 (citing Master Complaint from *Walters*, No. 17-10164, ECF No.

185-2.) The Court found that, based on these facts, Busch and Prysby

knew of and did infer a substantial risk of serious harm to Flint water

users, and showed a callous disregard for Marble's right to bodily

integrity. These facts apply with equal force to Bacon. Busch and Prysby

argue that "[t]he first allegation that Busch or Prysby had knowledge of

a *legionella* issue in Flint is alleged to be March 10, 2015, six months

after Plaintiff's alleged contraction." (ECF No. 91, PageID.1301.)

However, the Court has already rejected this contention in *Brown* and

*Marble.*

[T]he risks of using Flint River water channeled through the
FWTP were substantial. The complaint alleges that many of

these MDEQ Defendants knew as early as May 2014 that Flint's water was contaminated in ways that could be life threatening. (*Id.* at PageID.5130–5131, 5140–5141.) Even if the MDEQ Defendants were not aware of *legionella* bacteria in particular by the time of Odie Brown's death, the facts alleged plausibly show that Busch, . . . and Prysby were aware of the dangerous condition of the City's water supply before she died.

*Brown*, 2020 WL 1503256, at * 10 (citing *Walters*, No. 17-10164, ECF No. 185-2); *see also Marble*, 453 F. Supp. 3d at 996–997. Accordingly, Busch and Prysby's motion to dismiss Plaintiff's bodily integrity claim is denied. Plaintiff's bodily integrity claim against Busch and Prysby may continue.

### f) Defendant Rosenthal

With respect to Rosenthal, the *Walters* Master Complaint—adopted in full by Plaintiff here—contains essentially the same allegations related to the plaintiffs' bodily integrity claims in *Carthan. Walters*, 2019 WL 3530874, at *18. On appeal, the Sixth Circuit summarized Rosenthal's alleged pre-September 2014 conduct that applies equally to Bacon in this case.

On April 16, 2014, the week before the switch to the Flint River, Rosenthal received an email from Michael Glasgow, stating, "[I]t looks as if we will be starting the plant up tomorrow and are being pushed to start

distributing water as soon as possible. . . . I would like to make sure we are monitoring, reporting and meeting requirements before I give the OK to start distributing water." *Carthan*, 960 F.3d at 314. (citing Amended Complaint in *Carthan*, No. 16-10444, ECF No. 349, PageID.11804.) And the very next day, Glasgow informed the MDEQ that "the FWTP was not fit to begin operations and that 'management' was not listening to him." *Id.* The Sixth Circuit also noted that, "[b]ack in May 2014, MDEQ officials—including Busch, Prysby, and Rosenthal—knew that [total trihalomethane] levels were above the EPA's maximum contaminant level but did nothing, even as residents raised concerns about the water." *Id.* at 315 (citing Master Complaint in *Carthan*, No. 16-10444, ECF No. 349, PageID.11813–14.). Moreover, in the summer of 2014, the Michigan Department of Health and Human Services ("MDHHS") reported an outbreak of Legionnaires' disease, which  occurs when water droplets contaminated with *legionella* bacteria are inhaled. (*Id.*) These events all took place before Bacon became ill.

The relevant allegations that the Sixth Circuit in *Carthan* found sufficient to state a claim against Rosenthal for bodily integrity are that Rosenthal was the MDEQ Water Quality Analyst who "did not stop the

switch to the Flint River in spite of Glasgow's warning that the FWTP was not ready." *Id*. at 327. That Rosenthal "knew as early as May 2014 that the water contained high TTHM levels that were above regulation. . . and did nothing." *Id*. These same facts pleaded in the *Walters* Master Complaint are sufficient to show that Rosenthal knew of and did infer a substantial risk of serious harm to Flint water users, including Bacon.[9] Further, these allegations are adequate to show that Rosenthal callously disregarded Bacon's right to bodily integrity. Rosenthal's motion to dismiss is denied, and Plaintiff's claim against him may continue.

### g) Defendant City of Flint

Plaintiff alleges the City of Flint is liable under 42 U.S.C. §1983 as a result of the unconstitutional actions taken by Earley and Ambrose. (*Walters*, No. 17-10164, ECF No. 185-2, PageID.5051–52, 5055–56.) Under *Monell v. Dep't of Soc. Servs. of the City of New York*, a plaintiff may bring a § 1983 claim against a city for the unconstitutional conduct of its employees only if the employees' conduct implemented a policy

---

[9] This conclusion still stands even without the facts cited in *Carthan* regarding the September 2014 MDHHS report regarding lead poisoning levels in children being higher than usual, the officials' October 2014 realization that bacterial contamination partly stemmed from the over-75-year-old-pipes, or any of the other later-in-time facts. *Carthan*, 960 F.2d at 315.

"officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). However, a municipality "cannot be held liable solely because it employs a tortfeasor." *Id.* at 691. Liability will only attach where the policy or custom was the "moving force" behind the constitutional violation. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).

In *Carthan*, the Court held that Earley and Ambrose "were final decisionmakers for Flint with respect to the decision to provide residents with contaminated water." 384 F. Supp. 3d at 865 (citing *Carthan*, 329 F. Supp. 3d at 421–22). As such, "their actions represented official policy and Flint could be held liable for their conduct insofar as it violated plaintiffs' rights." *Carthan*, 329 F. Supp. 3d at 422.

Here, even though Plaintiff has conceded to dismissal of Earley and Ambrose (ECF No. 105, PageID.1476), she states a claim for *Monell*-based bodily integrity against the City of Flint for the same reasons set forth in *Carthan* and *Brown*. *Carthan*, 329 F. Supp. 3d at 422; *Brown*, 2020 WL 1503256, at * 14.

### 3. Wealth-Based Equal Protection Claim

Plaintiff alleges that MDEQ Defendants, State Defendants, and City Defendants violated her right to be free from wealth-based discrimination. (ECF No. 86, PageID.1189.) Plaintiff's wealth-based equal protection allegations are based solely on the allegations set forth in the Master Complaint from *Walters*. In *Walters*, the Court analyzed and dismissed the plaintiffs' wealth-based discrimination claims because the plaintiffs failed to identify how their treatment differed from a similarly situated class of persons. *Walters*, 2019 WL3530874, at *20. The Court adopts these conclusions from *Walters*, and Plaintiff's wealth-based equal protection claim is dismissed.

### 4. Professional Negligence Claim

Plaintiff also alleges a professional negligence claim against Defendants LAN, LAD, and Rowe. (ECF No. 86, PageID.1189.) Only LAN and LAD moved to dismiss. However, neither LAN nor LAD have presented any arguments that differ from the arguments presented and rejected in *Walters*. 2019 WL 3530874, at *40. For the reasons set forth in *Walters*, LAN's motion to dismiss is denied. Plaintiff's claims for professional negligence against LAN and LAD may go forward.

### 5. Punitive Damages Claim

Plaintiff also incorporates the Punitive Damages claim from the Master Complaint in *Walters* against all Defendants. (ECF No. 86, PageID.1189 (*Walters*, No. 17- 10164, ECF No. 185-2, PageID.5234).) MDEQ Defendants, State Defendants, and LAN move to dismiss. (ECF No. 89, 91.) City Defendants and LAD incorporate their motions to dismiss this claim in other cases. (ECF No. 93, PageID.1327; ECF No. 90, PageID.1206.)

Punitive damages may be awarded in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Based on the allegations set forth in the above bodily integrity section of this Opinion and Order, Plaintiff plausibly pleads both recklessness and indifference to the right to bodily integrity against Defendants Snyder, Croft, Glasgow, Johnson, Busch, Prysby, Rosenthal, and the City of Flint (*Monell*-liability). As a result, Plaintiff may continue to seek punitive damages against these Defendants with respect to her remaining § 1983 bodily integrity claim.

Plaintiff also alleges she is entitled to punitive damages because she brought professional negligence claims against LAD and Rowe. Plaintiff acknowledges that these issues were already litigated in *Brown* and *Marble*. There, the Court dismissed the plaintiffs' claims for punitive damages related to professional negligence, because the plaintiffs in those cases acknowledged that punitive damages are not available for negligence claims. *See Marble*, 453 F. Supp. 3d at 1010; *Brown*, 2020 WL 1503256, at *16. The result here is no different. Plaintiff's punitive damages claim against LAN and LAD under a professional negligence theory are dismissed.

Rowe answered the complaint and did not move to dismiss this claim. However, in light of this decision, Rowe may file a motion under Rule 12(c) within sixty days, which is Monday December 21, 2020.

### 6. Joint and Several Liability and Exemplary Damages

Plaintiff acknowledges that her assertions of joint and several liability and exemplary damages are identical to those rejected in *Marble*, *Brown*, and *Walters*. (ECF No. 101, PageID.1394.) While she disagrees with the Court's rulings in those cases, Plaintiff provides no basis for a different result here. (*Id.*) The Court agrees that the rulings in *Marble*,

*Brown*, and *Walters* apply and dictate the same result here. Accordingly, Plaintiff's assertions of joint and several liability and claim for exemplary damages are dismissed.

## V. Conclusion

Defendants' motions to dismiss Plaintiffs' Short Form Complaint are granted in part and denied in part. Specifically, Defendants' motions to dismiss:

- Plaintiff's wrongful death claim (Count XIII) is GRANTED as to all Defendants (except Rowe), because Plaintiff did not plead any facts to demonstrate that Bacon's death, or injuries resulting in death, were caused by *legionella* exposure or, in turn, by any wrongful act, neglect or fault Defendants;

- Plaintiff's state-created danger claim (Count I) is GRANTED as to all Defendants;

- Plaintiff's bodily integrity claim (Count II) is GRANTED with respect to Dillon, Cook, and the City of Flint, but DENIED with respect to Snyder, Croft, Glasgow, Johnson, Busch, Prysby, and Rosenthal;

- Plaintiff's wealth-based equal protection claim (Count IV) is granted as to all Defendants;

- Plaintiff's punitive damages claim (Count VIII) is GRANTED with respect to Plaintiffs' professional negligence claims against LAN and LAD, but DENIED with respect to Plaintiff's § 1983 claims; and

- Plaintiff's request for exemplary damages and allegations of joint and several liability are GRANTED.

Plaintiff's request that she be given leave to amend is DENIED.

As set forth above, Rowe may file a motion under Rule 12(c) as to Plaintiff's wrongful death and punitive damages claims within sixty days, which is Monday December 21, 2020.

### VI. Order

IT IS ORDERED THAT,

MDEQ Defendants' motion to dismiss (ECF No. 91) is **GRANTED** in part and **DENIED** in part; City Defendants' motion to dismiss (ECF No. 93) is **GRANTED** in part and **DENIED** in part; LAN and LAD's motions to dismiss (ECF Nos. 89, 90) are **GRANTED** in part and **DENIED** in part.

As a result, Plaintiff's bodily integrity claims against Defendants Snyder, Croft, Glasgow, Johnson, Busch, Prysby, and Rosenthal will

proceed; her professional negligence claims against LAN and LAD will proceed; and Plaintiff may continue to request punitive damages with respect to her remaining § 1983 claims. All of Plaintiff's other claims are dismissed except as to Rowe as set forth above.

IT IS SO ORDERED.

Dated: October 22, 2020          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 22, 2020.

                            s/William Barkholz
                            WILLIAM BARKHOLZ
                            Case Manager